IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs October 27, 2004

## STATE OF TENNESSEE v. MICHAEL KEITH MASSENGILL

**Appeal from the Circuit Court for Blount County**
**No. C-13914     D. Kelly Thomas, Jr., Judge**

_____

**No. E2003-02836-CCA-R3-CD - Filed November 22, 2004**

_____

The defendant, Michael K. Massengill, appeals the revocation of his probation, arguing that the trial court erred in failing to place him back on intensive probation or in the community corrections program after he violated his probation. Following our review, we affirm the order of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and J. C. MCLIN, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal), and Mack Garner, District Public Defender (at trial), for the appellant, Michael Keith Massengill.

Paul G. Summers, Attorney General and Reporter; Seth P. Kestner, Assistant Attorney General; Michael L. Flynn, District Attorney General; and Michael Gallegos, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On June 25, 2003, the defendant pled guilty in the Blount County Circuit Court to one count of criminally negligent homicide, a Class E felony, which arose out of an automobile accident. The trial court sentenced him to six years as a Range III, persistent offender, all suspended except for sixty days to be served in the Blount County Jail, with the remainder to be served on intensive probation. Among other conditions of probation, he was ordered to pay restitution for out-of-pocket expenses and submit to a drug screen twice a month. On November 5, 2003, a probation violation report was filed, alleging that the defendant had violated his probation by traveling outside the county without the probation officer's permission and testing positive for cocaine and methadone.

At the defendant's November 20, 2003, revocation hearing, his Knox County probation officer, Allison Moody, testified that she began supervising the defendant on September 30, 2003, after he was transferred from Blount County.  At their first meeting on October 7, the defendant told Moody he had been going to a methadone clinic in Chattanooga for treatment.  She told him he would no longer be able to travel to Chattanooga without her permission and a travel permit, and he needed to have his records transferred to the Knoxville methadone clinic.  At that meeting, a field test on the defendant's urine sample showed positive for cocaine and opiates.  A laboratory test later showed positive for cocaine and methadone.  At their October 21 meeting, the defendant told Moody that he had again traveled to the methadone clinic in Chattanooga without her permission, and a field test showed positive for opiates.  On November 4, he brought Moody a prescription dated November 2002 for "MS Contin" in an effort to explain the positive drug screens.  At their November 12 meeting, before she could perform another drug screen, sheriff's deputies arrived at the office and arrested the defendant on the October 21 warrant.

The defendant testified he transferred from his Blount County probation officer, Marcus Miller, to Knox County after he lost his home due to his incarceration.  He stated he suffered a gunshot injury in 1996 and had undergone "seven or eight" surgeries as a result.  He had taken "a lot of MS Contin" to control the pain from those surgeries.  He also stated, "I got strung out on the MS Contin, so I try not to take it.  So, I went to the methadone clinic for that.  But it does help with my pain and allows me not to take the MS Contin."  The defendant had been receiving treatment at a methadone clinic in Knoxville, but was removed from the "active list" when he began serving his sixty-day sentence.  After his release from jail, he began going to a clinic in Chattanooga because he was able to get in quicker due to the fact that it only treats about half the number of patients as the Knoxville clinic.  His Blount County probation officer knew about the defendant's methadone treatment, but "[h]e didn't act like it was a problem" and "never really questioned" the defendant about it.  After his first meeting with Moody, the defendant went to the Knoxville clinic and was placed on the waiting list but continued going to the Chattanooga clinic.  When asked why he continued going to Chattanooga even though Moody told him not to, the defendant stated, "I'm under a doctor's care there" and "She never mentioned a travel permit."  Additionally, the defendant explained why he felt he could continue leaving the county without permission:

> So I did what she asked me to do, I got on the list.  And I thought I could continue to go and get my methadone until I could get to Knox County and get in [there].  That was my thought.  It wasn't that I was doing something she told me not to do.  I didn't look at it like that. I wasn't trying to break my probation, I can assure you.

The defendant testified he used cocaine the day he got out of jail, but he wasn't "dirty" at the time of the October 7 drug screen.  He denied testing positive for cocaine that day, saying, "I can read that chart, too.  I can read those dipsticks."  He said that he occasionally takes MS Contin for pain and that he would do what he was ordered to do if restored to probation.  He said he "probably" drove himself to Moody's office on October 7, the day the drug screen showed positive for cocaine and opiates.

At the conclusion of the hearing, the trial court found that the defendant had violated the conditions of his probation by using cocaine and leaving the county without permission and ordered that he serve his six-year sentence in the Department of Correction.

As to this appeal, we note that on November 24, 2003, the defendant filed both a notice of appeal and a waiver of appeal. On December 10, 2003, he filed another notice of appeal. Since the parties subsequently have proceeded as if the defendant wished to appeal, we have done likewise.

## ANALYSIS

Although the defendant admits he violated the terms of his probation, he argues that he is an "ideal candidate" for alternative sentencing and that he has demonstrated that, with proper supervision from a probation officer who takes an active interest, he can successfully complete probation.

A trial court is granted broad authority to revoke a suspended sentence and reinstate the original sentence if it finds by the preponderance of the evidence that the defendant has violated the terms of his or her probation and suspension of sentence. Tenn. Code Ann. §§ 40-35-310, -311 (2003). The revocation of probation lies within the sound discretion of the trial court. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); State v. Stubblefield, 953 S.W.2d 223, 226 (Tenn. Crim. App. 1997); State v. Mitchell, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991). To show an abuse of discretion in a probation revocation case, "a defendant must demonstrate 'that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred.'" State v. Wall, 909 S.W.2d 8, 10 (Tenn. Crim. App. 1994) (quoting State v. Delp, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980)). The proof of a probation violation need not be established beyond a reasonable doubt, but it is sufficient if it allows the trial court to make a conscientious and intelligent judgment. Harkins, 811 S.W.2d at 82 (citing State v. Milton, 673 S.W.2d 555, 557 (Tenn. Crim. App. 1984)). We review this issue, therefore, for an abuse of discretion.

In determining that the defendant's probation should be revoked, the trial court stated:

> The proof establishes clearly, to me, three violations from [the defendant] of his probation: Using crack cocaine the day that he was released from serving 45 days of a 60-day split confinement; using cocaine on or before October 7th, 2003, the date of the positive drug screen for cocaine; and traveling out of the county without a travel permit after having been told that he needed one by his probation officer.
>
> . . . .

-3-

My thought is that the likelihood of [the defendant] rehabilitating himself and following the law is not good. And the reason I come to that conclusion is simply that a person who was charged with vehicular homicide, pled guilty to a criminally negligent homicide that arose out of blacking out, or whatever, in the middle of the afternoon and running through the front wall of a house and killing an elderly lady sitting in a chair holding her granddaughter or some baby, and only had to serve 45 days in jail because of that – and I'm not saying that that wasn't an appropriate disposition, but I'm saying anybody that has any chance at all of being rehabilitated is not going to come out of jail after being involved in that kind of a crime with those kinds of – with a death, and then hit a crack pipe that very day. That speaks volumes as to how much this whole episode impressed you about what you were supposed to do and not do.

And I don't think the public safety can chance your continued driving to methadone clinics and using cocaine every month or two. And I just think it's a danger. And you've had an opportunity to show that this tragedy was an out-of-the-ordinary thing that wouldn't be repeated and you certainly haven't done anything to show me that you have the responsibility necessary to ensure that that doesn't happen again. So, I'm not going to risk it.

The defendant's probation officer testified that the defendant told her he left the county multiple times without permission and he tested positive for cocaine on a drug screen. The defendant himself admitted to smoking crack cocaine the day he got out of jail and to leaving Knox County several times without the permission of his probation officer or a travel permit. Accordingly, we conclude that the trial court did not abuse its discretion in revoking the defendant's probation and reinstating his original sentence.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court revoking the defendant's probation and ordering that he serve his six-year sentence in the Department of Correction.

_____
ALAN E. GLENN, JUDGE